JOHN B. NICHOLSON *vs.* WILLIAM R. JANEWAY and others.

1. An undue concealment of a fact to the prejudice of another, which one party is bound in conscience and duty to disclose to the other, and in respect to which he cannot innocently be silent, constitutes a fraud against which equity will relieve.

2. In all transactions between partners, and all parties occupying towards each other a fiduciary character, the law requires the utmost degree of good faith.

3. If a partner who superintends the business and accounts of the concern, by concealment of the true state of the accounts and business, purchases the share of another partner for an inadequate price, the purchase will be held void, and the purchaser compelled to account for the real value.

4. Nor does it affect the case that the alleged concealment is charged to have been practiced by one partner only, and that the others were ignorant of the fact concealed. The principle applies, whether the fraud was perpetrated by the party directly interested, or by *an agent.* The principal by seeking to retain any benefit resulting from the transaction, becomes *particeps criminis,* however innocent of the fraud in its inception.

5. Equity will relieve against a contract made under a mistake, or ignorance of a *material* fact; not only where there has been a concealment of facts by one party, but also in cases of mutual mistake or ignorance of facts.

6. To constitute a fraud or mistake for which equity will relieve against a contract, it is essential that the fact misrepresented or concealed be *material.* It must either affect the substance of the contract, or the value of the thing bargained for; or be such as induces the party aggrieved to pay more, or accept less, for the thing bargained for, than its real value.

7. Equity will not grant relief against a contract on the ground of mistake, when the mistaken fact did not operate as an inducement to enter into the contract.

*H. V. Speer,* for complainant.

*Schenck,* for defendants, cited *Farrar* v. *Alston,* 1 *Dev. L. R.* 69; *Saunders* v. *Hatterman,* 2 *Ired. L. R.* 32; 2 *Kent's Com.* 487.

THE CHANCELLOR. In the year 1861, the complainant and the defendants were co-partners in the business of manu-

facturing and selling paper hangings. By the terms of the contract, the partnership was to continue until the first of July, 1864. By an agreement entered into on the seventeenth of December, 1861, between the defendants of the one part, and the complainant of the other, the co-partnership subsisting between them was dissolved, and the defendants having associated themselves as partners in a new firm, agreed to purchase the interest of the complainant in the assets and business of the old firm, upon certain conditions specified in the agreement. The agreement was intended to operate, and virtually did operate as a withdrawal of the complainant from the firm, and a transfer of his interest in the partnership concerns to his co-partners, the defendants. In pursuance of the articles of dissolution, the complainant retired from the firm on the thirty-first of December, 1861, but continued in the employ of the defendants at a stipulated salary, until the the twenty-first of April following, when he was discharged from their service. On the sixth of October, 1862, the complainant filed his bill in this cause, praying that the articles of dissolution may be declared null and void, and that the complainant may be restored to his membership in the firm, from the date of the articles of dissolution, and to all his rights as a partner.

Previous to the year 1861, the affairs of the concern had been prosperous, but upon the breaking out of the rebellion, and the consequent depression and embarrassment of the market, its business was greatly diminished, and the firm was threatened with heavy losses. From July until December, its manufactory was closed. In this state of things the complainant expressed a desire to withdraw from the firm, to which his co-partners assented, and a dissolution of the partnership was agreed upon and executed. One of the terms of dissolution was, that the books and accounts of the firm should be balanced and the amount ascertained, to which, under the articles of co-partnership, the complainant was entitled, excluding therefrom all doubtful claims. That for the amount thus ascertained, the defendants should give their

notes at six, twelve, and eighteen months. That the suspended or doubtful debts should be collected by the defendants, and the complainant's share of the net proceeds paid to him from time to time, as it should be collected. It turned out upon a settlement of the accounts, that instead of their being a cash balance due the complainant at the date of the dissolution, the cash balance was against him to the amount of $1800. The suspended debt, contrary to the expectation of all the partners when they entered upon the negotiation to dissolve, amounted to $20,917.20. The complainant's portion of this debt was $4183.44, which exceeded his entire interest in the concern. The true state of the account was ascertained during the progress of the negotiation for dissolution by one of the partners, who was the principal financial manager, and who had charge of the books of the firm. He became satisfied, from an examination of the books, that there would be but little or nothing coming to the complainant upon the dissolution of the firm. This fact was not disclosed to the complainant, but he was suffered to execute the contract under the erroneous expectation and belief that upon his leaving the firm there would be found a cash balance in his favor.

This constitutes the entire equity of the complainant's bill. Admitting the charge to be fully sustained by the evidence, does it furnish any ground for relief in equity?

It is no objection to relief that there was no actual or intentional misrepresentation of a material fact. None is charged. Whether a fraud is effected by silence or by positive misrepresentation, is immaterial. An undue concealment of a material fact to the prejudice of another, which one party is bound in conscience and duty to disclose to the other, and in respect to which he cannot innocently be silent, constitutes a fraud, against which equity will relieve. 1 *Story's Eq. Jur.*, § 204.

In regard to partners, and all parties occupying towards each other a fiduciary character, the law to prevent undue advantage from the confidence which the relation naturally cre-

ates, requires the utmost degree of good faith (*uberrima fides*) in all transactions between the parties. 1 *Story's Eq. Jur.*, § 218.

And hence if a partner who superintends the business and accounts of the concern, by concealment of the true state of the accounts and business, purchases the share of another partner for an inadequate price, by means of such concealment, the purchase will be held void, and the purchaser compelled to account for the real value. *Maddeford* v. *Austwick*, 1 *Sim. R.* 89 ; 1 *Story's Eq. Jur.*, § 220.

And the case is in no wise affected by the fact that the alleged concealment is charged to have been practiced by one of the defendants only, and that the others may be assumed to have been entirely ignorant of the fact in regard to which the concealment was practiced. The negotiation, it is admitted, was conducted by one of the defendants, as well on his own behalf, as the agent, and on behalf of his associates. The principle applies, whether the fraud was perpetrated by the party directly interested or by an agent. The principal, by seeking to retain any benefit resulting from the transaction, becomes *particeps criminis*, however innocent of the fraud in its inception. 1 *Story's Eq. Jur.*, § 193, *a.*

Nor would the case have been materially altered if all the defendants had been equally ignorant of the fact. A contract made under a mistake or ignorance of a material fact, is relievable in equity. The rule applies, not only where there has been a concealment of facts by one party which would amount to fraud, but also to cases of mutual mistake or ignorance of facts. 1 *Story's Eq. Jur.*, § 140.

But to constitute a fraud or mistake, for which equity will relieve against a contract, it is essential that the misrepresentation or concealment should be practiced, or the mistake made, in regard to a fact *material* to the contract; that is, it must be essential to its character, and an efficient cause of its concoction. 1 *Story's Eq. Jur.*, § 141, § 192, § 195.

Upon this point all the authorities concur. The fact misrepresented or concealed, must either affect the substance of

the contract, or the value of the thing bargained for; or, if it be an extraneous fact, it must be such as induces the party aggrieved to pay more or to accept less for the thing bargained for, than its real value.

Now it is not pretended that the complainant was induced, by the mistake under which he labored, to accept less for his interest in the concern than its real value. The prospects of the concern were not in reality better, nor were the value of the assets greater than he believed them to be when he assented to the dissolution. He contracted to receive for his interest in the concern precisely its value at the time of the dissolution, *viz.* his share of the assets realized in cash, or its equivalent, and his share of the suspended debt as fast as it should be collected. The only mistake was, that the suspended debt of the concern was larger than he anticipated, and he consequently received no portion of his interest in cash. It does not appear that he will eventually receive a dollar less than was *anticipated*. He may receive more, though the time of payment be postponed beyond his expectations. I think, therefore, that the mistake is not of such a character as entitles the party to relief in equity.

But what relief can the complainant have? He does not ask that he shall be paid the full value of his interest in the concern. That is secured to him by the contract. But he asks that the contract for the dissolution shall be rescinded, and that he shall be restored to all his rights as a partner, from the time of the dissolution in 1861. How shall that be done in justice to the other partners? The complainant contributed but little to the financial capital of the partnership. He was taken into the concern as a partner, as the bill shows, mainly on account of his skill and experience as a manufacturer. That was his contribution to the capital of the partnership. Of that the defendants have been deprived for nearly two years. The partnership, by its limitation, will terminate within nine months. By what principle of equity shall he be permitted to share in the profits of the concern as a partner, when he has contributed nothing of

skill or capital to the business, and shared in none of the hazards of the enterprise? He was apprised of his mistake, as the bill alleges, immediately after the execution of the contract. Had he then refused to withdraw from the firm; had he insisted upon his rights, and proffered his services as a partner, and called upon this court for its protection, he would at least have had the semblance of equity on his side. But he acquiesced in the contract, withdrew from the firm during its period of depression, and accepted a post of superintendent in the employment of the defendants, at a stated salary, thus escaping all the hazards of the business. And now when business has revived, and the affairs of the firm become more prosperous, he asks to be restored to all his rights as a partner. The relief asked for would be utterly inconsistent with the plainest principles of justice and equity.

The bill must be dismissed.