R. CHARLES D. LEGG, PLAINTIFF-RESPONDENT, v. COUNTY OF PASSAIC, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued January 18, 1939—Decided February 17, 1939.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *Harry L. Schoen.*

For the respondent, *Peter Cohn.*

The opinion of the court was delivered by

PARKER, J. Plaintiff, a coroner of Passaic county, presented a claim against the county for "viewing" some thirteen dead bodies. *R. S.* 22:4-6. Payment being refused, this suit was brought; and the defense was, in substance, that in Passaic county there was a county physician, pursuant to the act of 1876 (*Comp. Stat., p.* 1704; *R. S.* 40:21-23 *et seq.*); that by the act of 1878, amended in 1885 (*Comp. Stat., p.* 1705, *pl.* 6) in counties where there is a county physician, the coroner is not entitled to any fee for viewing a body except by written order of the county physician. The section contains a proviso, but it is not claimed that such proviso is applicable. The District Court entered a judgment for plaintiff, and on reargument reiterated that judgment in a written opinion which held that the County Physician act was invalid

as a defense because it impaired the powers of a coroner as derived from the English law and recognized by our State Constitutions of 1776 and 1844.

We consider that the judgment in favor of the respondent was erroneous, and for several reasons. In the first place, it is to be observed that the question involved is not the broad question whether the "Act respecting county physicians" of 1876 (*Comp. Stat., p.* 1704) is unconstitutional *in toto,* but the very narrow question whether the supplement of 1878 (*Pamph. L., p.* 321) as amended in 1885 (*Pamph. L., p.* 299) is in violation of the constitutional rights of a coroner, whatever they may be, in a county where there is a county physician. The revision of this statute in *R. S.* 40:21-29 abbreviates the language of the act of 1885 without any material alteration, and is reproduced here for convenience. It reads thus: "Where there is a county physician in office, no coroner in the county shall be entitled to receive any fees for viewing the body of any deceased person, unless such view shall have been made upon the written order of the county physician, and the written order shall be attached to the bill of the coroner for such service before being audited or paid, but where the county physician's presence cannot be obtained within six hours after written notice given to him by the coroner of the discovery of the death of any such person, the coroner may proceed. In such cases the coroner shall make an affidavit setting forth the giving of notice as above provided. Such notice shall be served personally upon the county physician or left at his dwelling house or usual place of abode."

It will be observed that this statute goes no farther than to say that the coroner shall not be entitled to fees for viewing a body except under certain conditions laid down in the act and which do not obtain in this case; and the right to fees is all with which we are now concerned. It seems clear to us that, whatever the constitutional status of a coroner, and whatever his constitutional right to "view" dead bodies (of which more presently) he has no constitutional right to any specified fee, or indeed any fee at all. Public officers

frequently serve without pay; the commissioners of county parks are a familiar instance. For considerably over a century the powers of a coroner have not been absolutely exclusive under our statutes, for as early as the year 1801 (Revision of 1821, page 511; *Elm. Dig.* 93) the legislature provided for cases in which coroners might not be available by conferring the same powers and jurisdiction on a justice of the peace.

In the second place, while it may be unnecessary at the present juncture, in view of what has already been said, we think it proper to point out that one of the fundamental policies of our jurisprudence is not to declare unconstitutional a statute which has been in force without any substantial challenge for many years unless its unconstitutionality is obvious. *Stale* v. *Kelsey*, 44 *N. J. L.* 1; *Engeman* v. *State*, 54 *Id.* 247, 252; *Wintermute* v. *Ellenstein*, 117 *Id.* 274, 279. The principal was distinctly stated in *State* v. *Wrightson*, 56 *Id.* 126 (at *p.* 206), where the court said: "Contemporaneous construction and long usage and especially the practical interpretation by the various departments of the government, are entitled to great weight in the construction of constitutional provisions." In that case the court set aside the statutory scheme of electing members of the assembly by districts which had prevailed for many years, but only on the ground that the language of the constitution was perfectly clear in its language and could not possibly admit of any other interpretation, but that each member of the legislature from any county should be elected by a plurality ballot of all the voters of that county.

The "act respecting county physicians" (*Comp. Stat., p.* 1704; *R. S.* 40:21-23, &c.) dates from 1876; and we are not aware of any decision, nor has any been pointed out in the brief for the respondent, which questions in any way the constitutionality of that act. The main argument now appears to be, as it was in cases presently to be cited, that because coroners were recognized in the constitution of 1776, article XIII, and also in the constitution of 1844, article VII, section 11, paragraph 7, such coroners had all the powers with which they had been vested at common law and under ancient

English statutes going back to the fourth of Edward I, Statute No. 2, and that they could not be deprived of any of those powers. The same argument was urged in behalf of sheriffs in the case of *Virtue* v. *Freeholders,* 67 *N. J. L.* 139, which was expressly overruled in *State* v. *De Lorenzo,* 81 *Id.* 613 (at *p.* 620), in which latter case the fundamental question of the manner of selecting jurors was involved. Similarly the same question was raised in regard to the attorney-general (also a constitutional officer; see paragraph 4 of section 11 of article VII), in the case of *Public Utility Commissioners* v. *Lehigh Valley Railroad,* 106 *Id.* 411.

The case of *Tomai* v. *Savaslano,* 112 *N. J. L.* 362, is relied on for the respondent. The decision in that case upholds the common law powers of a justice of the peace to receive a criminal complaint and take bail; but whatever its effect on the question of those particular powers we deem it inapplicable in the present case, in which only the right to fees is involved.

Certain subordinate points in the brief for the respondent may properly be noticed. The first is that the appeal should be dismissed "because the appellant has failed to indicate which, if any, of the six specifications of determination filed by it in this cause, it is arguing or attempting to argue." As they all seem to be in *pari materia,* we deem this point to be unsubstantial.

The next point is that the County Physicians act (*Comp. Stat., p.* 1704) is inapplicable to the respondent and does not expressly or impliedly supersede or repeal the Coroners act. We are dealing, however, with the amended supplement of 1885, the text of which, of course, deals with the right of a coroner to receive fees. As to the argument that this is not within the title of the act, the answer is, in the language of the late Mr. Justice Garrison, that the title is a label and not an index. Legislation in which the body of the act bears upon some other act but the title does not, is common enough. For example, the "act concerning District Courts" does not mention justices of the peace or justices' courts in its title, but it distinctly provides that in territory where a District Court has jurisdiction no justice of the peace shall exercise

any civil jurisdiction. The title of the "act concerning municipalities" was held sufficient to support legislation creating a beach front commission "in every municipality of this state under control of the Municipal Finance Commission, and which shall own the beach and upland contiguous thereto." *Hetrick* v. *Roberts*, 117 *N. J. L.* 584; 190 *Atl. Rep.* 504; *affirmed*, 118 *N. J. L.* 586.

In closing, it may not be out of place to observe that a District Court is an inferior court and that it is not ordinarily within its purview to deal with debatable questions relating to the constitutionality of statutes of long standing. In *Orbey* v. *Wright*, 37 *N. J. L. J.* 50 (at *p.* 52), the Court of Common Pleas of Union county recognized this principle; and in the case of *In re Woodland Avenue Drain, East Orange*, 39 *Id.* 362, the late Judge Dungan, one of our ablest Circuit Court judges, dealing with the question of constitutionality of a statute said: "However, the constitutionality of this particular statute does not appear to have been the subject of consideration and decision by our appellate courts, and I am inclined to the belief that the better practice is for the inferior court to assume that an act is constitutional until it has been passed upon by the appellate court, unless it is so clearly in contravention of the constitution that there can be no reasonable doubt about it, which does not apply to the statute under consideration."

The judgment of the District Court will be reversed; and as the facts are all stipulated, judgment for the defendant may be entered as the judgment of this court. *Smith* v. *Ocean Castle*, 59 *N. J. L.* 198; *National Bank* v. *Berrall*, 70 *Id.* 757; *Hurey* v. *Leavitt*, 93 *Id.* 299.