21 N.J. Super. 159 (1952)
90 A.2d 558
AARON K. NEELD, DEPUTY DIRECTOR DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF NEW JERSEY, PLAINTIFF,
v.
AUTOMOTIVE PRODUCTS CREDIT ASSOCIATION, A NEW JERSEY CORPORATION, T/A A.P.C.A. SERVICE STATION, DEFENDANT.
Superior Court of New Jersey, Union County District Court.
Decided March 24, 1952.
*160 Mr. Theodore D. Parsons, Attorney-General, by Mr. Henry W. Eckel, Jr., for the plaintiff.
Messrs. Stein & Stein, by Mr. Samuel Stein, for the defendant.
FULOP, J.D.C.
The Deputy Director of the Division of Taxation, Department of the Treasury of the State of New Jersey, brings this action to recover a penalty under the provisions of R.S. 56:6-2 (b) and R.S. 56:6-3. It charges that defendant has, during a designated period, sold motor fuel at a price below the net cost to it plus all selling expenses, in violation of the statute.
The facts are stipulated. They include an audit report of defendant's operation for the period beginning at 3 P.M. on June 25, 1951, and ending at 7 A.M. on July 2, 1951. The report shows that it took the auditors three full days, July 2, 1951 to July 5, 1951, to make the audit for the brief period involved. It reveals that defendant sells two kinds of gasoline and oil. Every item was sold for more than the purchase price thereof. However, the gross profit realized on the gasoline was less than the allocated share of the cost of operating the business.
R.S. 56:6-2 (b) provides:
"(b) No retail dealer shall sell motor fuel at a price which is below the net cost of such motor fuel to the retail dealer plus all selling expenses."
*161 If the allocation of the cost of operating the business is correct, then the defendant violated the statute by selling motor fuel below the net cost plus all selling expenses.
These are the only facts before me.
Defendant asserts two defenses:
1. That R.S. 56:6-2 (b) is unconstitutional because it unlawfully interferes with the right of defendant to engage in a lawful business.
2. That the statute is unconstitutional because it is too indefinite to be enforceable.

AS TO THE PROPRIETY OF PASSING ON CONSTITUTIONAL QUESTIONS.
Neither party has raised any question as to the propriety of passing upon the constitutionality of a statute in a district court, which is an inferior court of limited jurisdiction.
In Legg v. County of Passaic, 122 N.J.L. 100, 4 A.2d 300 (Sup. Ct. 1939), Mr. Justice Parker quoted with approval from an opinion of Judge Dungan that "the better practice is for the inferior court to assume that an act is constitutional until it has been passed upon by the Appellate Court, unless it is so clearly in contravention of the constitution that there can be no reasonable doubt about it, * * *."
That view was reaffirmed "as the guide for courts of inferior jurisdiction" in State v. Packard-Bamberger & Co., 123 N.J.L. 180, 8 A.2d 291 (Sup. Ct. 1939).
It is clear that it is not the function of this court to pioneer in the field of constitutional law. The presumption of constitutionality must be applied with greater force here than in the appellate courts. The pattern of the law must be drawn by the appellate courts. The trial courts, especially those of limited jurisdiction, must follow, not lead.
Nevertheless, the issues presented must be determined. There must be a conviction or an acquittal. I cannot conceive it to be my duty to convict when an acquittal is indicated, *162 on the theory that the question should be settled on appeal. Even a policeman must construe the Constitution in the performance of his duty.

THE RIGHT TO FIX PRICES.
In State v. Packard-Bamberger & Co., 123 N.J.L. 180, 8 A.2d 291 (Sup. Ct. 1939), a price-fixing statute very similar to the one here under consideration was held invalid. It applied to all merchandise. One of the two grounds upon which the court based its decision was that the regulation of prices of merchandise not affected with a public interest was prohibited without relation to injurious effect in stifling competition.
The case is exactly in point. But for the passage of time and subsequent decisions, no further discussion would be in order.
The statute in our case deals with a commodity not affected with a public interest, except as a fire hazard. Reingold v. Harper, 6 N.J. 182, 78 A.2d 54 (1951).
The statute under consideration states no objective. It does not require proof that the selling below cost was intended to or might have the effect of stifling competition. The liability is absolute. All selling below cost is prohibited.
In Regal Oil Co. v. State, 123 N.J.L. 456, 10 A.2d 495 (Sup. Ct. 1939), another section of the same statute (L. 1938, c. 163, as amended, L. 1939, c. 62, was declared unconstitutional. That was the section now designated R.S. 56:6-2 (d) which regulates the advertising of the price. The court held that the regulation of the advertising of the price of gasoline had no substantial relation to the public welfare and did not justify the exercise of the police power.
The cost to the dealer has little bearing on the competitive effect of his price. A large refiner may sell at retail for a price much lower than a dealer who must buy from the refiner in small quantities. A large retailer may be able to buy in quantity for less than an individual dealer.
*163 The effect is discriminatory. The means of fair and unfair competition are left open to the refiner and large dealer, while the individual dealer is barred by law from competing.
In Lane Distributors v. Tillon, 7 N.J. 349, 81 A.2d 786 (1951) the Unfair Cigarette Sales Act was held invalid. The court reviewed the recent cases on price fixing. It concluded that a statute which controls prices at which commodities may be sold is not per se unconstitutional. It is only prohibited by the Constitution if the regulation is "arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt."
The court held it to be discriminatory to prohibit a corporation whose stockholders were retail dealers from selling to them at wholesale prices, while permitting one which made 75% of its sales to retailers not connected with it, or a chain corporation or an operator of more than 30 vending machines to do so.
There is a difference in the nature of the discrimination there condemned from that which appears in this case. Under the statute here considered all retail dealers are prohibited from selling below cost. The discrimination is latent. It results from the differential in cost which cannot be seen on the face of the statute.
Although I am inclined to think it invalid, it cannot be said to be clear beyond a reasonable doubt that the prohibition against selling below cost, without more, is unconstitutional.

THE STATUTE IS UNENFORCEABLE FOR UNCERTAINTY.
The statute provides that the retail dealer may not sell below the "net cost" "plus all selling expenses." The statute does not define "net cost." "Selling expense" is defined as follows: "`Selling expense' includes all overhead and general business expense."
It must be assumed that selling expense includes not merely what is generally classified as overhead and general *164 business expense, but also the cost of labor and other costs directly involved in dispensing the gasoline. The State apparently so conceives it.
By what standard is the cost of labor to be measured by an individual dispensing gasoline in his own station? Must he charge union wages for his own time? May he sell at a lower price than the neighboring dealer who employs an attendant?
By what standard are the expenses of operating a gas station to be allocated? Is a garage man who maintains a pump in connection with his business required to attribute the cost of maintaining his building pro rata to the amount of money received for storage and repair work and the amount of money received for gasoline?
Must a gas station that maintains a telephone and a comfort station charge more than a gas station that has neither?
The case presented here is about as simple a case as can be found. It was undoubtedly selected to avoid complications. Nevertheless, the statute sets no standard and I am unable to determine what are proper expenses of selling.
If there is a generally accepted standard which may, by inference, be read into the statute, that fact has not been proved.
The audit report refers to "operating expenses." They include labor, telephone expense, printing, stationery, interest on invested capital, and other items. These are allocated in proportion to the number of dollars received for each item sold. I cannot take judicial notice and I do not know that the method of allocation is proper. The expense of selling oil may be far greater than the expense of selling gasoline. The telephone may not be needed for either purpose. I cannot determine which are overhead charges and which are mere conveniences that the proprietor desires to have for reasons of his own.
In State v. Packard-Bamberger & Co., supra, the court held that prohibition against selling below cost, without *165 providing a clear and adequate standard for determining cost, is so uncertain as to be unenforceable.
On this point, no authority to the contrary has been cited or has come to my attention.
It follows that the statute is unenforceable. Judgment of acquittal will be entered in favor of the defendant. In the event of an appeal, the stipulation of facts is hereby certified in lieu of evidence.