106 N.J. Super. 196 (1969)
254 A.2d 552
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
IRVING L. BANDER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division Criminal.
Decided June 17, 1969.
*197 Mr. Thomas J. Smith, Assistant Prosecutor, for the State (Mr. Vincent P. Keuper, Monmouth County Prosecutor).
Mr. Daniel J. O'Hern for defendant-appellant (Messrs. Abramoff, Apy and O'Hern, attorneys).
McGOWAN, J.C.C.
Defendant was convicted in the Municipal Court of the City of Asbury Park of violating N.J.S. 2A:170-78; particularly, he was convicted of practicing law without having a license to do so while engaged as a real estate agent or broker.
The complaint charges defendant with engaging in the practice of law by drafting and preparing a contract for the sale of real property and advising the prospective purchaser under said contract as to the terms and details of the contract and procuring the execution of it.
The matter is before this court on an appeal from such conviction and has been heard de novo in this court on the record, there having been a transcript of the proceedings below. See R.R. 3:10-10(a.).
A reading of the transcript of the proceedings below indicates that the facts are for all practical purposes undisputed and uncontested. I find the facts to be that at the time *198 of the alleged offense, defendant was a licensed real estate broker with his office in Asbury Park, New Jersey, and acting in such capacity prepared a contract of sale for certain real estate therein described and which contract has been marked in evidence. Thereafter, he forwarded it to the sellers, who were actually his principals and resided in Michigan. Subsequently, the contract was executed by the sellers and forwarded to their New Jersey attorney for review. At the suggestion of this attorney the contract was amended in certain particulars and returned to defendant's office where it was executed by the buyers. There is some question as to whether or not defendant himself was actually present at the time of the execution. Ruth Lane, an employee, testified that defendant was not present and that she supervised the execution of the contract. She also confirms that the contract was originally dictated to her by defendant and that she had typed it previously. In any event, it is clear, and I so determine and find, that the buyers did not have the advice of a lawyer with respect to the contract up to and including the execution of the contract.
The acting magistrate, after hearing the evidence, in a written opinion found and determined that the preparation of the contract for the sale of land constituted the practice of law. He further found and determined that defendant was guilty of violating N.J.S. 2A:170-78, which prohibits any one from practicing law who is not licensed to do so. This was done notwithstanding the language of subparagraph (d) of N.J.S. 2A:170-81, which allegedly protects and authorizes a licensed real estate broker to draw deeds, bonds, mortgages, leases or releases, agreements or assignments, by way of exception to the general prohibition in the N.J.S. 2A:170-78, on the ground that subparagraph (d) of N.J.S. 2A:170-81 is unconstitutional.
At the hearing on the appeal before this court, it was stipulated that the preparation of a contract of sale constitutes the practice of law, and indeed this would seem to be supported by the holdings in N.J. State Bar Ass'n v. Northern *199 N.J. Mortgage Associates, 22 N.J. 184, 196 (1956); Jeffcott v. Erles, 84 N.J. Super. 70, 74 (Cty. D. Ct. 1964); State ex rel. Reynolds v. Dinger, 14 Wis.2d 193, 109 N.W.2d 685 (Sup. Ct. 1961).
Therefore, the sole question before this court at this time is whether the preparation of the contract by a licensed real estate broker is authorized by subparagraph (d) of N.J.S. 2A:170-81. This statute enumerates certain exceptions to N.J.S. 2A:170-78 which makes it a disorderly persons offense for any person not licensed as an attorney at law to engage in the practice of law in this State. Defendant's contention is that he comes within the exception contained in subparagraph (d) of N.J.S. 2A:170-81 which reads that the provisions of this article shall not apply to:
"d. The drawing of deeds, bonds, mortgages, leases, releases, agreements or assignments by a licensed real estate broker or any one employed by him"
and that this allows him to practice law within certain areas without fear of prosecution.
The determination of this question of necessity involves the determination of the validity of the so-called exception portion of the statute. The court is mindful of the fact that a statute is cloaked with a strong presumption of constitutionality and that no Legislative act should be declared unconstitutional and void unless its repugnancy to the applicable constitutional provisions is clear beyond a reasonable doubt. To declare a statute unconstitutional is a judicial power to be delicately exercised, and particularly is this true at the trial level. Neeld v. Automotive Products Credit Association, 21 N.J. Super. 159 (Cty. D. Ct. 1952); Legg v. County of Passaic, 122 N.J.L. 100 (Sup. Ct. 1939), and State v. Ulesky, 100 N.J. Super. 287, 295 (Cty. Ct. 1968), reversed on other grounds 54 N.J. 26.
Art. VI, § II, par. 3 of the New Jersey Constitution (1947) provides as follows:
*200 "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."
It is thus patently apparent that the exemption provision of the statute above recited is diametrically in conflict with the provisions of the New Jersey Constitution above cited, as opposed to the more common situation where it is necessary to interpret the provisions of a statute, for one reason or the other, to determine whether the provisions thereof are repugnant to a constitutional provision beyond a reasonable doubt. Since the conflict is clear, it is the court's opinion that even though it is at the trial level, the court is duty bound to decide the issue.
It is now well settled in our State that the Supreme Court has exclusive jurisdiction over the practice of law. N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, supra. Justice Jacobs, speaking for the court in New Jersey State Bar Ass'n v. Northern N.J. Mtge. Associates, 32 N.J. 430, 436 (1960), citing the same case as reported in 22 N.J. 184, 198, supra, holds that while the Legislature may adopt a statute which penalizes the unlawful practice of law (N.J.S. 2A:170-78), it may not constitutionally authorize the practice of law by any one not duly admitted to the bar by the Supreme Court. Also see In re Baker, 8 N.J. 321, 336 (1951).
In the case of Jeffcott v. Erles, supra, Judge Wood referring specifically to N.J.S. 2A:170-81 (d), held that such exception is in violation of Art. VI, § II, par. 3 of the Constitution, as clearly established by Chief Justice Vanderbilt's opinion in N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, supra, 22 N.J., at p. 198.
A situation similar to the instant case is found in State ex rel. Reynolds v. Dinger, 14 Wis.2d 193, 109 N.W.2d 685 (1961). In that case, the Supreme Court of Wisconsin had before it a regulation of the Wisconsin Real Estate *201 Brokers Board which allowed brokers to perform certain functions, among which were to fill in standardized contract forms. The attorney general brought an original action to declare such rule invalid as being an infringement upon and an usurpation of the inherent and exclusive power of the Supreme Court of Wisconsin. The majority held that since the brokers did not charge for preparing such legal documents which had become incidental to the broker's usual and ordinary business, it would not determine that this enlarged the practice of law previously permitted and which had not been theretofore prohibited by the Supreme Court. There was a Wisconsin statute involved which, among other things, defined the practice of law as being an appearance in or out of court for compensation or receiving pecuniary reward for giving professional legal advice not incidental to or in accordance with such person's usual or ordinary business. The court further determined that while it had the full control over the practice of law, it could, if it wished, in the public interest void any rule, law or regulation by whomever promulgated if it appeared to the court to interfere with the court's control of such practice. The court concluded that the rule in question constituted a practice by laymen which it had already long permitted, and if and when they had a change of heart, they could readily alter the situation. A reading of the majority opinion and of the Wisconsin statute referred to indicates that the atmosphere in Wisconsin and the attitude in New Jersey are vitally different, because it clearly suggests that in Wisconsin there had been long acquiescence on the part of the court and bar of that state in permitting laymen to practice law incidental to such laymen's usual or ordinary business. It is the opinion of this court that such is not and has not been the situation in New Jersey. It is to be noted that even if such acquiescence or lethargy does exist, it can not clothe the practice of law in this State by laymen with validity. See to same effect State Bar of Arizona v. Arizona Land Title and Trust *202 Co., 90 Ariz. 76, 366 P.2d 1 (Sup. Ct. 1961), and Justice Hallows dissent in Dinger, supra.
Initially the framers of the 1947 New Jersey Constitution demonstrated that the public interest demands and requires that the practice of law should and must be regulated by the Supreme Court, and by the Supreme Court alone. The practice of law is a function which should be performed in the public interest only by those who have received training and experience therein in the manner and method prescribed by the Supreme Court. Defendant has argued that a real estate broker is required to take certain courses and an examination to become qualified as a real estate broker, and among these courses is one in drawing contracts for the sale of property, deeds and other instruments permitted in the section of the statute above-mentioned. In the trial below in the municipal court the testimony of the president of the county real estate board was offered to the effect that it was his opinion that by reason of such training real estate brokers were qualified for such purpose. A mere inspection of the requirements of the real estate board and of the requirements of the Supreme Court with respect to the practice of law indicates such thinking to be specious and detrimental to the public interest. Real estate transactions today involve matters which should be expertly handled with respect to numerous facets, the least of which are the construction of contracts, deeds, covenants and restrictions; knowledge of the law for fixing closing dates; knowledge with respect to details and terms of numerous and different kinds of mortgages now involved, and knowledge of numerous other items which it would serve no purpose to elaborate on, except to say that only the qualified should be advising the public with respect to same. Our courts have said this in other language on numerous occasions, as Justice Jacobs stated in New Jersey State Bar Ass'n v. Northern N.J. Mtge. Associates, supra, 32 N.J. 430, wherein he reiterated the view of the late Chief Justice Vanderbilt set forth in 22 N.J. 195:
*203 "The privilege of engaging in the practice of law is strictly confined to individual attorneys who have been duly licensed upon proper showings of character and competency and who are at all times subject to rigid rules of conduct." (at p. 436.)
It is the opinion of this court that defendant is guilty of violating N.J.S. 2A:170-78. I further determine his activity as above outlined constituted the unlawful practice of law and that he cannot defeat or absolve his guilt by relying on the so-called exemption statute N.J.S. 2A:170-81 (d), for I further find this so-called exemption provision to be unconstitutional and a nullity. The Legislature's action in passing this statute, arbitrarily and unjustifiably divested the exclusive authority given to the Supreme Court of this State by our Constitution.