119 N.J. Super. 411 (1972)
291 A.2d 858
GROSSMAN FURNITURE CO. INC., PLAINTIFF,
v.
ELEANOR PIERRE, DEFENDANT.
Superior Court of New Jersey, Essex County District Court.
Decided May 23, 1972.
*412 Messrs. Arthur J. Corkery and Robert S. Fisher for plaintiff.
Mr. Sam Farrington, Essex County Legal Services, for defendant.
*413 YANOFF, P.J.D.C.
This is a test case in which defendant questions the constitutionality of the New Jersey Replevin Act, N.J.S.A. 2A:59-1, on the ground that it permits the taking of property by force without a preliminary trial-type hearing, alleging that it thereby violates the Fourth and Fourteenth Amendments of the United States Constitution. No claim is made of unconstitutionality under the New Jersey Constitution.
The factual context in which the issue is raised is that plaintiff sold defendant and her husband household furniture, including a bedroom set, a refrigerator and other items for a cash price of $2,065 and a time sale price of $2,385. Although a blank space is provided for that purpose on the contract form, the time sale price is not inserted. I have obtained it by adding the time balance and down-payment as directed by the contract.
The contract is a single sheet. On its face are set out the items sold, the cash price, the trade-in, unpaid cash balance, principal balance, time-price differential and time balance, as well as the amount of each installment, and the number of installments. The print is 8-point. The first sentence of the contract reads: "Undersigned Seller sells and undersigned Buyer (if more than one, jointly and severally) purchases subject to the terms and conditions set forth on both sides hereof the Merchandise described below." Both defendant and her husband signed.
Beneath their signatures is the statement, "For office use only," below which is an area equal in size to the contract already described consisting of unfilled blank spaces.
On the reverse side of the sheet appears, "Other Conditions of Contract," the third paragraph of which contains a reservation of title, an acceleration clause and a right to retake the property upon default. The type is the same size as that on the face.
Below this is a form of assignment and notices with respect to group and property insurance.
*414 Procedurally, the matter arose on order to show cause based upon an affidavit in which Mrs. Pierre stated that her only source of income is from Aid to Dependent Children benefits; that her husband has deserted her; that most of her furniture was removed from her home as result of the execution of the writ of replevin, including the refrigerator in which she kept her food; that she had no place to keep her own and her children's clothing; that she had a meritorious defense; that she had paid approximately three-quarters of the time-sales price, and that she could not afford the cost of the re-replevin bond required by N.J.S.A. 2A:59-6.
The order to show cause provided as interim relief that specific items of furniture, including the refrigerator, be returned to defendant, and that she be subject to contempt penalties if she failed to deliver them to plaintiff upon court order. The Attorney General was given notice of this proceeding, but elected not to appear.
Oral testimony was taken upon the return date of the order, in the course of which Mrs. Pierre confirmed her statements as to her poverty and her urgent need for the repossessed goods. As to these matters there is no question, and I find them to be a fact.
By way of defense, defendant alleged that
1. Plaintiff was guilty of equitable fraud because it did not affirmatively advise her of the security provisions.
2. Failure to insert the time sales price constitutes a violation of N.J.S.A. 17:16C-17.
3. Failure to separately describe the property in connection with the security provisions is a violation of the same statute.
4. Defendant is not bound by the security provisions because they were not specifically called to her attention in view of their location on the reverse side of the contract.
I directed that a hearing be held to determine whether defendant could make a prima facie showing of a meritorious defense because it would be pointless to explore an issue of constitutionality addressed solely to whether a defendant in *415 replevin was entitled to hearing prior to the taking if it developed at the conclusion of the case that in all events plaintiff was entitled to possession of the property. A hearing was held at which plaintiff, defendant and the constable who took possession of the property testified.
However, I have determined not to decide the constitutional issue. The principles which control a court's function when a constitutional question is raised are well settled. Some of them are enunciated in WHYY, Inc. v. Glassboro, 50 N.J. 6 (1967) where Justice Schettino said for the court:
Moreover, there is a strong presumption that a statute is constitutional, In re Village of Loch Arbour, 25 N.J. 258, 264-65 (1957), and a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Gangemi v. Berry, 25 N.J. 1, 10 (1957). "To declare a statute unconstitutional is a judicial power to be delicately exercised." Wilentz v. Hendrickson, 133 N.J. Eq. 447, 487 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944). [at 13]
This case was reversed, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968), for other reasons.
In the words of Judge Kilkenny: "It is axiomatic that courts will not decide constitutional issues not necessary to the disposition of the case before them." Accident Index Bureau, Inc. v. Hughes, 83 N.J. Super. 293, 302 (App. Div. 1964), aff'd 46 N.J. 160 (1965). In my view, justice can be done in this case without deciding the constitutional question.
Additionally, as a trial judge, I am enjoined not to hold a statute unconstitutional except in a clear case. Legg v. Passaic County, 122 N.J.L. 100 (Sup. Ct. 1939), aff'd 123 N.J.L. 263 (E. & A. 1939); State v. Packard-Bamberger & Co., Inc., 123 N.J.L. 180 (Sup. Ct. 1939); Neeld v. Automotive Products Credit Ass'n, 21 N.J. Super. 159, 161 (Cty. D. Ct. 1952); State v. Cannarozzi, 77 N.J. Super. 236 (App. Div. 1962); Chalmers v. Chalmers, 117 N.J. Super. 474 (Ch. Div. 1971); Almor Furniture & Appliances v. MacMillan, 116 N.J. Super. 65 (Cty. D. Ct. 1971).
*416 It cannot reasonably be said that this is a clear case. Throughout the country, as the result of Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), courts are being pressed for determinations that the taking of property or property rights without a prior trial-type hearing violates constitutional rights. The issue is substantial and judicial responses have not been uniform.
Courts have found a constitutional infirmity where replevin laws have not provided for a full trial-type hearing prior to the taking: Laprease v. Raymours Furniture Co., 315 F. Supp. 716 (N.D.N.Y. 1970) (New York replevin statute, N.Y. Civil Practice Law & Rules §§ 7101 et seq. (McKinney 1970)); Kosches v. City of New York, 10 U.C.C. Rep. Serv., Release #1, p. 3, March 8, 1972 (N.Y. Civil Ct.) (New York Uniform Commercial Code retaking provisions, N.Y. Uniform Commercial Code §§ 9-503 and 9-504 (McKinney 1964)); Blair v. Pitchess, 5 Cal.3d 258, 96 Cal. Rptr. 42, 486 P.2d 1242 (Sup. Ct. 1971) (California replevin statute, Cal. Code Civ. Proc. §§ 509-521); Adams v. Egley, 338 F. Supp. 614 (S.D. Cal. 1972) (California Uniform Commercial Code retaking provisions, Cal. Uniform Commercial Code §§ 9503 and 9504 (West 1970); Blocker v. Blackburn, 228 Ga. 285, 185 S.E.2d 56 (Sup. Ct. 1971) (Georgia replevin statute, Ga. Code §§ 61-401 to 61-407); Westinghouse Credit Corp. v. Edwards, CCH Poverty Law Reports, June 28, 1971 (Mich. C.P.) (Michigan replevin statute, 23 M.S.A. §§ 27A.7301 et seq., M.C.L.A. § 600.7301 et seq). Other courts have sustained the constitutionality of such statutes: Brunswick Corp. v. J. & P. Inc., 424 F.2d 100 (10 Cir.1970) (Oklahoma replevin statute, 12 O.S. §§ 1571 et seq.); Fuentes v. Faircloth, 317 F. Supp. 954 (S.D. Fla. 1970) (Florida replevin statute, F.S. §§ 78.01 et seq. F.S.A.); Epps v. Cortese, 326 F. Supp. 127 (E.D. Pa. 1971) (Pennsylvania replevin statute, 12 P.S. § 1821 and Pa. R. Civ. P. §§ 1071-1087, 12 P.S. Appendix); *417 Union Teachers Credit Union v. Fran Kay Hunter, 2 CCH Poverty Law Reports 13,265, July 20, 1971 (Ill. Cir. Ct.) (Illinois replevin statute, 119 Ill. Anno. St. § 1 et seq.). Fuentes and Epps have been appealed to the United States Supreme Court, which has not yet spoken.[1]
In view of the strongly defined principles as to judicial restraint in overriding legislative action for constitutional reasons, it is apparent that this court must approach the problem with the utmost circumspection. Nevertheless, I would not be deterred from laying the issue on the table were there not an alternative basis for doing justice between the parties. In this connection the comment of Judge Fulop, while a county district court Judge, in Neeld v. Automotive Products Credit Ass'n., supra, in which he held a statute unconstitutional is pertinent:
It is clear that it is not the function of this court to pioneer in the field of constitutional law. The presumption of constitutionality must be applied with greater force here than in the appellate courts. The pattern of the law must be drawn by the appellate courts. The trial courts, especially those of limited jurisdiction, must follow, not lead.
Nevertheless, the issues presented must be determined. There must be a conviction or an acquittal. I cannot conceive it to be my duty to convict when an acquittal is indicated, on the theory that the question should be settled on appeal. Even a policeman must construe the Constitution in the performance of his duty. [21 N.J. Super. at 161-162]
The consequences here to defendant and her family of living without a bed or a chest of drawers, or a refrigerator, are probably more calamitous than the money penalty which would have been imposed upon defendant in Neeld had the statute been sustained.
Defendant has had a preliminary trial-type hearing, so in this case at least, she has not been deprived of her constitutional rights. As the result of the evidence thus taken, I conclude *418 that one of the defenses which she asserts has substance.
There is not the least doubt that she signed the contract. Her testimony is that it was part of a pad of forms, that she did not read it, and that she had no idea that it contained a recapture provision. Her education was very limited, but she is not illiterate.
I recognize that the general rule in New Jersey is that a person is bound by his signature to a contract, even though he has not read it. Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205 (App. Div. 1951); Moreira Constr. Co., Inc. v. Morterench Corp., 97 N.J. Super. 391 (App. Div. 1967).
But the rule that a person is bound by his signature has never been without limitation. There are legislative limitations on the contracts a person can make. Usury laws are an example of an ancient one. N.J.S.A. 31:1-1 et seq. There are others, e.g., wagering contracts (N.J.S.A. 2A:40-3); contracts to compound a crime (N.J.S.A. 2A:97-1). More recently the Legislature enacted a battery of statutes designed to protect persons in defendant's unfavorable bargaining position, and prohibited certain contract provisions. Retail Installment Sales Act, N.J.S.A. 17:16C §§ 35, 36, 37, 64. By decision the courts have invalidated many contracts or contract provisions for illegality. One need only read the headings in 2 Restatement, Contracts, §§ 559-597 at 1065-1109 (1932), to appreciate the variety of undertakings which the law refuses to enforce because of illegality, violation of public policy or statutory prohibition.
Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960) and Unico v. Owen, 50 N.J. 101 (1967) expanded the circumstances under which a contract provision might be invalidated. In Henningsen the court struck down "the disclaimer of an implied warranty of merchantability by the dealer, as well as the attempted elimination of all obligations other than replacement of defective parts, [as] violative of public policy * * *." (32 N.J. at 408).
*419 In Unico the court held that the buyer was not bound by a "so called waiver of defenses or estoppel" clause contained in the sales contract. Justice Francis, speaking for the court, said:
In consumer goods transactions there is almost always a substantial differential in bargaining power between the seller and his financer, on the one side, and the householder on the other. That difference exists because generally there is a substantial inequality of economic resources between them, and of course, that balance in the great mass of cases favors the seller and gives him and his financer the power to shape the exchange to their advantage. [50 N.J. at 110]
Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955), a decision which preceded Henningsen, is also significant because a major basis for its ruling invalidating lease clauses exculpating a landlord from active wrongdoing was the inequality of bargaining power between landlord and tenant in periods of housing shortage.
The principle which unites these cases is that the law as a matter of public policy protects the weaker party from provisions which surrender economic rights where his bargaining position is grossly unequal. The basic principle was recognized in Moreira, supra, in which the contract was upheld, where the court said:
Furthermore, in Henningsen the court noted that the clause in question was a standardized one used throughout the automotive industry, 32 N.J., at p. 390, thus leaving the consumer with no alternative but to accept the terms of the contract as stated. In 1958 defendant Moretrench Corp., was the world's largest well point company: Ivy H. Smith Company v. Moretrench Corporation, 253 F.2d 688, 689 (5 Cir. 1958). However, there was testimony to the effect that there were three competitors of defendant in the area and there was no showing that plaintiff was precluded from negotiating a contract on more favorable terms.
Exculpatory clauses in apartment house leases also have been held to be invalid because of inequality of bargaining power, Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955), but such clauses are normally valid in leases of industrial property since no inequality of bargaining power exists. Mayfair Fabrics v. Henley, 48 N.J. 483 (1967); Midland Carpet Corp. v. Franklin Assoc. Properties, 90 N.J. Super. 42 (App. Div. 1966). [697 N.J. Super. at 395]
*420 There are also equitable considerations which, under Vineland Shopping Center, Inc. v. DeMarco, 35 N.J. 459 (1961); Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116 (1967), and Marini v. Ireland, 56 N.J. 130 (1970), a county district court is empowered to consider. The basic principle is stated in Keen v. James, 39 N.J. Eq. 527 (E. & A. 1885):
Prof. Pomeroy, in his discriminating work on jurisprudence, very lucidly discusses the elements of fraud affecting contracts, and in treating of fraudulent concealments, lays down this proposition: "If either party to a transaction conceals some fact which is material, which is within his own knowledge, and which it is his duty to disclose, he is guilty of actual fraud." 2 Pom. Eq. § 901. * * * The case must amount to a suppression of facts which one party under the circumstances, is bound in conscience and duty to disclose to the other party, and in respect to which he cannot, innocently, be silent. [at 540-541]
Where a party permits another to sign a contract knowing that he is under a misapprehension as to its terms, there is equitable fraud which warrants reformation or rescission. John A. Cozzone and Co. v. Redfield, 98 N.J. Eq. 41 (Ch. 1925), aff'd 103 N.J. Eq. 19 (E. & A. 1928); Lloyd v. Hulick, 69 N.J. Eq., 784 (E. & A. 1905); Simpson Plumbing & Heating Co. v. Geschke, 76 N.J. Eq. 475 (Ch. 1909), aff'd 78 N.J. Eq. 306 (E. & A. 1910). Even where an instrument, by reason of the draftsman's mistake of law, fails to express the intent of the parties it will be reformed. Brodzinsky v. Pulek, 75 N.J. Super. 40 (App. Div. 1962). The evidence at this point in the case is that defendant did not know that the contract contained a provision permitting retaking on default. The evidence shows also, and I am convinced from my own observation, that defendant was not capable of understanding the recapture clause as written. She is a woman of limited intelligence, utterly without business experience. Intellectually and financially she was completely at the mercy of plaintiff. One may speculate what her reaction would have been had the idea been brought home to her *421 that when she had paid virtually all of the cash price and an amount equal to three-quarters of the time sales price, the goods which she had skimped so hard to pay for could be taken away by reason of a default. Fair dealing would dictate that at least she should have been told. This duty arises by reason of the disparate position of the parties. Hansen v. Janitschek, 57 N.J. Super. 418 (App. Div. 1959) rev'd on another ground, 31 N.J. 545 (1960), is relevant. The applicable facts are summarized:
Briefly stated, the court concluded plaintiff had proved that plaintiff and her brothers were part of a closely knit family group, inclusive of their late father, founder of the family business; plaintiff and her brothers were partners in the ownership of certain realty; plaintiff did not know the contents of the partnership and other agreements; plaintiff conveyed her one-third interest in certain of the partnership realty valued at $26,500 for $1,500 because of her brothers' misrepresentations and fraud in failing to advise her of all the material facts; and that plaintiff was defrauded thereby. Based on these findings the court properly applied the well-settled rule of law that where one party, having superior knowledge, misrepresents material facts to another, or fails to reveal material facts which he is under a duty to reveal, and thereby induces such other party to enter into an unconscionable bargain, such conduct constitutes fraud which will move a court of equity to grant relief. Nicholson v. Janeway, 16 N.J. Eq. 285 (Ch. 1863); Jaeggi v. Andrews, 124 N.J. Eq. 155 (Ch. 1938); Stark v. Reingold, 18 N.J. 251 (1955). This principle of law is applicable even if we assumed no confidential or dominant relationship existed between the parties. [at 422]
If it be said that here there was no family duty, defendant was only a buyer, it is sufficient to say that the doctrine of caveat emptor is dead. Henningsen, supra; Unico supra; Newmark v. Gimbel's Incorporated, 54 N.J. 585 (1969).
In other jurisdictions courts have deleted "fine print" provisions which were not called to the parties' attention, without relying on the disparity of bargaining power premise.
In Arthur Philip Export Corp. v. Leathertone, 275 App. Div. 102, 87 N.Y.S.2d 665 (App. Div. 1949), plaintiff ordered six drums of material from defendant. In small print on the right hand side in the lower center of the face of the *422 order form appeared "(see also back)." On the reverse side appeared "this order further subject to the following terms," one of which provided for arbitration.
The question was whether defendant was bound by the arbitration provision. The appellate court reversed the decision in favor of plaintiff, holding that it was a fact question whether the arbitration provision had been called to defendant's attention by reason of prior dealings between the parties. In the course of its opinion, the court stated:
A party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated. [at 667]
Accord: Commercial Factors Corp. v. Kurtzman Bros., 131 Cal. App.2d 133, 280 P.2d 146 (D. Ct. App. 1955).
Putzer v. Vic-Tanny-Flatbush, Inc., 20 A.D.2d 821, 248 N.Y.S.2d 836 (App. Div. 1964), involved a suit for personal injuries allegedly caused by defendant's negligence. Paragraph 5 of the membership contract entered into between plaintiff and defendant was construed as a valid covenant not to sue. The Court stated:
However, since this immunity provision was contained in `fine print' on the reverse side of the instrument which plaintiff admittedly signed, it will be for the trier of the fact to decide whether this restriction upon his right to recovery was called to his attention when the instrument was executed and delivered. [at 837]
Accord: Tri-City Renta-Car and Leasing Corp. v. Vaillancourt, 33 A.D.2d 613, 304 N.Y.S.2d 682 (App. Div. 1969); Food Service Equipment Co. Inc. v. First National Bank of Atlanta, 121 Ga. App. 421, 174 S.E.2d 216 (App. Ct. 1970), cert. denied May 21, 1970.
In 1 Corbin, Contracts (1963 ed.), § 33 at 129, the author, in describing "fine print provisions," says:
*423 Such provisions as these are effective to attain their purpose only in case they are actually called to the attention of the other party to the negotiation or are so laid before him that he may be reasonably, and is in fact, believed to have been made aware of them.
Accord: Summers v. Hibbard, Spencer, Bartlett & Co., 153 Ill. 102, 38 N.E. 899 (Sup. Ct. 1894) (invalidating conditions of sale printed on a letterhead); May Hosiery Mills v. G.C. Hall & Son, 77 Cal. App. 291, 246 P. 332 (D. Ct. App. 1926) (invalidating a fine print limitation of liability on the face of a signed order form).
Such New Jersey Law as bears on the problem exhibits a tendency in accord. Ingersoll-Rand Co. v. U.S. Fidelity &c. Co., 92 N.J.L. 403 (E. & A. 1918), involved the sale of certain pieces of machinery. The contract of sale provided that the size and dimensions were to be set forth in attached "specifications." The unsigned specifications concluded with a statement that the title and right of possession were to remain in the seller until the equipment was fully paid for. The court stated the rule that where specifications are referred to for a specific purpose only, they become a part of the contract for such purpose only, and should be treated as irrelevant for all other purposes. It noted that the attached specifications were not in terms made a part of the contract and that the reference therein to them was in the clause describing the compressor as "of the size and dimensions as set forth in the attached specifications." Nusbaum v. H.G. Harris Co., 98 N.J.L. 567 (E. & A. 1922), presented the same issue as Ingersoll-Rand supra, except in the context of replevin rather than conversion.
In Henningsen, supra, the court dealt with the problem, saying:
In assessing its significance we must keep in mind the general principle that, in the absence of fraud, one who does not choose to read a contract before signing it, cannot later relieve himself of its burdens. Fivey v. Pennsylvania R.R. Co., 67 N.J.L. 627 (E. & A. 1902). And in applying that principle, the basic tenet of freedom of competent parties to contract is a factor of importance. But in *424 the framework of modern commercial life and business practices, such rules cannot be applied on a strict, doctrinal basis. The conflicting interests of the buyer and seller must be evaluated realistically and justly, giving due weight to the social policy evinced by the Uniform Sales Act, the progressive decisions of the courts engaged in administering it, the mass production methods of manufacture and distribution to the public, and the bargaining position occupied by the ordinary consumer in such an economy. This history of the law shows that legal doctrines, as first expounded, often prove to be inadequate under the impact of later experience. In such case, the need for justice has stimulated the necessary qualifications or adjustments. [32 N.J. at 386]
Justice Francis' citation at 395 of Cutler Corp. v. Latshaw, 374 Pa. 1, 97 A.2d 234 (Sup. Ct. 1953), in which an agreement to confess judgment buried among "`conditions' on the reverse side" was held unenforceable is more precisely in point.
Justice Francis' dictum in Unico, supra, is also significant:
This provision is the fifth of 11 fine print paragraphs on the reverse side of the sale contract. The type is the same as in the other clauses; there is no emphasis put on it in the context, and there is no evidence that it was in any way brought to Owen's attention or its significance explained to him. But regardless, we consider that the clause is an unfair imposition on a consumer goods purchaser and is contrary to public policy. [50 N.J. at 123]
On the basis of the foregoing I determine that in the present posture of the case there is ground for reformation of the contract to exclude the recapture clause. I am aware that this has not been done in any reported county district court case, but if a county district court may relieve against forfeiture, as the Supreme Court held it could in Vineland, supra, and Carteret Properties, Inc., supra, there is no reason why it may not give other equitable relief by way of defense. The evidence on final hearing may show that this clause was called to the attention of defendant and that she understood it. In such case there may be a different ruling. However, on the basis of what is now before me, an order for the purpose of preserving the status quo is necessary. Caplan v. Palace *425 Realty Co., 110 A. 584 (Ch. 1920), not in official reports; Isolantite, Inc. v. United Electrical, &c., of America, 130 N.J. Eq. 506 (Ch. 1941), aff'd 132 N.J. Eq. 613 (E. & A. 1942). This order will permit defendant to continue to retain the furniture which was restored to her by reason of the order made in conjunction with the order to show cause. It will also require plaintiff to continue to hold that portion of the furniture which was not restored to defendant. Both will be subject to court discipline in the event of an improper disposition of the items of furniture held by them. The case will be set down for early trial, with opportunity to both parties to conduct discovery.
NOTES
[1] On the 12th day of June, 1972, Fuentes v. Shevin and Epps v. Cortese sub nom. Parham v. Cortese, were reversed in 40 LW 4692 (June 13, 1972). [405 U.S. ___, 92 S.Ct. 1983, 32 L.Ed.2d 556].