**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5496-16T1

SPEEDWAY LLC,

      Plaintiff-Appellant,

v.

THE STATE OF NEW JERSEY
and ATTORNEY GENERAL
GURBIR S. GREWAL,

      Defendants-Respondents.

_____

Argued December 11, 2018 – Decided April 24, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0284-17.

Brian J. Molloy argued the cause for appellant (Wilentz, Goldman & Spitzer, PA, attorneys; Brian J. Molloy and Daniel J. Kluska, of counsel and on the briefs).

Renee Greenberg, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Wendy Leggett Faulk

and Renee Greenberg, Deputy Attorneys General, on the brief).

Brennan Law Firm, attorneys for amicus curiae New Jersey Gasoline-C-Store-Automotive Association and Fuel Merchants Association of New Jersey (Francis J. Brennan, III and Craig A. Cox, of counsel and on the brief).

PER CURIAM

Over seventy-five years ago, the New Jersey Legislature established "[a]n act to regulate the retail sale of motor fuels" (1938 Act), N.J.S.A. 56:6-1 to -17. Among other provisions, the 1938 Act prohibits retail dealers from selling gasoline below the net cost of the fuel plus all selling expenses, defined as "all overhead and general business expense[s]." N.J.S.A. 56:6-2(b); N.J.S.A. 56:6-1.

On October 16, 2016, the Middlesex County Department of Weights and Measures filed two complaints in the Woodbridge Municipal Court against plaintiff Speedway, LLC, alleging it violated N.J.S.A. 56:6-2(b) because it sold gasoline at its Hopelawn filling station below cost. According to Speedway, it is the "second[] largest chain of company-owned-and-operated convenience stores in the United States[,] with approximately 2730 locations in [twenty-one] states." Speedway owns and operates approximately seventy convenience stores in New Jersey, which all sell motor fuel.

A-5496-16T1

On February 13, 2017, Speedway filed a complaint in the Law Division seeking a declaration that the below-cost sales prohibition violated the due process clause of the New Jersey and United States Constitutions, infringed plaintiff's right to sell goods, and violated the Federal Civil Rights Act, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c). Speedway also sought an injunction to prevent defendant, the State of New Jersey, from enforcing the provision.

After the trial court granted defendants' motion to dismiss under Rule 4:6-2(e), Speedway filed this appeal. We affirm because the trial court, after accepting as true all of Speedway's factual allegations, properly dismissed the complaint. The Legislature's decision, as expressed in N.J.S.A. 56:6-2(b), prohibiting the below-cost sale of gasoline is a rational, necessary restraint on the market, and is in the public interest.

We also agree with the court that N.J.S.A. 56:6-2(b) is not unconstitutionally vague. The challenged terms – "net cost" and "expenses" – are words of common usage and understanding, particularly for a sophisticated business entity such as Speedway. Finally, because the below-cost sales provision addresses a specific state interest, it is not unconstitutionally overbroad.

A-5496-16T1

I.

We begin our opinion with a brief discussion of the 1938 Act, its subsequent amendment, and the relevant legislative history.

A. 1938 Act

The 1938 Act outlines the conditions for the sale of motor fuel by retail dealers. Among other requirements, it mandates that retailers post the per-gallon fuel price on each pump, and requires all dispensing equipment to conspicuously identify the fuel brand. N.J.S.A. 56:6-2(a) and (g). The fuel price must be posted inclusive of all taxes, and cannot employ rebates or concessions that would affect the sale of fuel below the posted price. N.J.S.A. 56:6-2(a) and (e). Retailers are prohibited from selling gasoline at a price below their net cost of the fuel plus all selling expenses, defined in the statute as "all overhead and general business expense[s]." N.J.S.A. 56:6-2(b); N.J.S.A. 56:6-1. As noted, Speedway challenges only the constitutionality of the below-cost sales prohibition, codified in subsection (b).

B. Amendments to the 1938 Act and Relevant Legislative History

The Legislature created a "Gasoline Study Commission" (Commission) in February 1952 to study New Jersey's gasoline industry, with an emphasis on those factors "governing the fixing of prices of gasoline to the public." In

addition, the Commission prepared a report that also "survey[ed] the operation of the entire gasoline industry in the [s]tate . . . with a view to[ward] correcting – if it appeared necessary and desirable – by legislative recommendation[], any practices which might be found to be injurious to the best interests of *all* the people of New Jersey."  (emphasis in original).

The report also explained that although the Commission's "paramount obligation" was to all New Jersey citizens, it stressed that:

> [s]pecial attention has been directed in this examination to the plight of those New Jersey citizens – small businessmen – who own or operate the retail outlets in this State.  The problem of the retailers and of all other phases of the petroleum industry have been carefully and fully reviewed both from the viewpoint of serving the best interests of the vast army of consumers of a commodity – gasoline – which has become a necessity in modern living and from the viewpoint of recognizing the difficult and important position of the small businessman in an industry dominated by giants.

The Commission recommended that the 1938 Act be amended to make it a misdemeanor if any distributor offered, or any retail dealer accepted, a rebate or concession with respect to the distribution of motor fuel.  The Commission also endorsed that the Legislature invoke the State's police power to protect the public welfare by ending unfair practices that curtailed, rather than strengthened

5

competition, because "[t]he motor fuel business constitutes such an important and necessary part in the economy of this State."

In addition, the Commission considered proposing that any retail distributor of fuel be required to sell "at a price determined by the [distributor's] cost of doing business plus the posted tankwagon price."[1] The Commission explained that company-owned-and-operated retail stations (at the time described as "few in number") were typically "integrated corporations" that can "exert considerable influences on the posted retail prices" and operate retail outlets at a loss if necessary "in sharp contrast to the individual dealer who is compelled to carry on his business at a profit in order to survive." Despite expressly recognizing the influence company-owned retail dealers had on the price of fuel, the Commission declined to recommend amending the 1938 Act in this regard because it concluded the below-cost sales prohibition adequately addressed the issue and additional legislation would be "superfluous."

The 1938 Act was amended in 1953, consistent with the Commission's recommendations, and retitled the Uniform Motor Fuels Practices Act, N.J.S.A. 56:6-19 to -32 (1953 Amendments). When passing the new legislation, the

---

[1] Tankwagon price represents "the price charged to the retailer by the wholesaler, or the invoice cost of motor fuel to the retailer."

A-5496-16T1

Legislature declared that the "practices of the distribution and sale of motor fuels in th[e] State have developed unfair methods of competition in the marketing of motor fuels" and that "conditions have . . . impair[ed] . . . the supply of motor fuel needed by the general public[,] thereby affecting the general economic welfare of the people of th[e] State." N.J.S.A. 56:6-19(a). Although the 1953 Amendments modified the 1938 Act to prohibit certain trade practices related to the distribution of motor fuel that "inten[d] to injure competitors or destroy or substantially lessen competition," N.J.S.A. 56:6-22,[2] the Legislature did not amend or change the below-cost sales prohibition to include similar language.

Since 2008, the Legislature considered a number of bills seeking to amend the below-cost sales prohibition that would permit a retailer to sell gasoline at a price below its net cost plus selling expenses to meet competition, and deem it illegal for a dealer to sell at a price below net cost if done with the intent to harm or injure competition. See Senate Bill No. 2414 (2008 Session); Senate Bill No. 484 and Assembly Bill No. 2932 (2010 Session); Assembly Bill No. 1567 (2012 Session); and Assembly Bill No. 1695 (2014 Session). None of these bills were

---

[2] N.J.S.A. 56:6-22 prohibits retailers from offering "a rebate, concession, allowance, discount or benefit . . . in connection with the sale or distribution of motor fuel."

A-5496-16T1

enacted. Accordingly, the Legislature has not altered the original language of N.J.S.A. 56:6-2(b) contained in the 1938 Act.

On appeal, Speedway raises five points of error, three of which relate to its claim that the 1938 Act, and specifically section (b), is unconstitutional. First, Speedway contends that the complaint alleged viable due process violations because the below-cost sales prohibition unreasonably and arbitrarily "deprives it of its property and liberty interests and abrogates its common-law right to sell goods," as the provision lacks "an element of intent and a meeting competition defense." Second, Speedway argues that the below-cost sales prohibition deprives it of due process of law because it is unconstitutionally vague as it "leaves retailers guessing at its meaning and application." In further support of this argument, Speedway contends that the State is collaterally estopped from disputing that section (b) is constitutionally infirm on vagueness grounds, because it unsuccessfully litigated the issue before another New Jersey court. Third, Speedway maintains that the below-cost sales provision is unconstitutionally overbroad. Fourth, Speedway claims that the court erred in dismissing violations of the New Jersey and Federal Civil Rights Acts. Finally, Speedway asserts that the court incorrectly applied Rule 4:6-2(e), failed to issue findings of facts and conclusions of law in accordance with Rule 1:7-4 and

requests that any remanded proceeding be conducted by a different judge. We disagree with all of Speedway's arguments and affirm.

## II.

We start with the standard of review. "On appeal, we engage in a de novo review from a trial court's decision to grant or deny a motion to dismiss filed pursuant to Rule 4:6-2(e)." Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (citing Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)). We accord no deference to the trial court's legal conclusions. Rezem Family Assocs., LP, 423 N.J. Super. at 114. When a court grants a party's motion to dismiss, "[w]e approach our review of the judgment below mindful of the test for determining the adequacy of a pleading: whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). "[T]he Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Ibid. (citing Somers Constr. Co. v. Bd. of Educ., 198 F.Supp. 732, 734 (D.N.J. 1961)).

## III.

Next, and before addressing each of Speedway's points on appeal individually, we briefly discuss basic constitutional principles applicable to

Speedway's challenge to the below-cost sales prohibition. Legislative enactments carry a "strong presumption in favor of constitutionality." Paul Kimball Hospital, Inc. v. Brick Twp. Hospital, Inc., 86 N.J. 429, 447 (1981). While the presumption can be rebutted, "it places a heavy burden on the party seeking to overturn the [statute]." Hutton Park Gardens v. Town Council, 68 N.J. 543, 564 (1975).

"[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation." Ferguson v. Skrupa, 372 U.S. 726, 729 (1963). Thus, courts reviewing the validity of a statute, should "properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." United States Tr. Co. v. New Jersey, 431 U.S. 1, 22-23 (1977). A court's power to declare a statute invalid is to be "delicately exercised," Kimball, 86 N.J. at 447, and "unless the statute is clearly repugnant to the Constitution," ibid., or "plainly exceeds the constitutional power of the Legislature, a court should not adjudge it invalid." Yellow Cab Co. v. State, 126 N.J. Super. 81, 94 (App. Div. 1973).

When a statute's facial constitutionality is challenged, courts should ask "whether the 'mere enactment' of [the] statute offends constitutional rights," as the "effects on particular participants in an industry are not dispositive." State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 46 (1991) (citing Hodel v.

10

<u>Virginia Surface Mining & Reclamation Ass'n, Inc.</u>, 452 U.S. 264, 295 (1981)). "In cases dealing with the validity of price-control statutes . . . , holdings of facial unconstitutionality are exceedingly rare." <u>Ibid.</u> Further, if a statute may be construed as valid or unconstitutional, the construction "which will uphold its validity must be adopted." <u>Ahto v. Weaver</u>, 39 N.J. 418, 428 (1963) (citing <u>State v. Hudson Cnty. News Co.</u>, 35 N.J. 284, 294 (1961)). The reasonableness of a governmental price regulation may be reinforced by "the existence of an 'emergency'" and a "determination that the industry regulated is 'affected [with] a public interest.'" <u>Hutton Park Gardens</u>, 68 N.J. at 561-62 (first quoting <u>Como Farms, Inc. v. Foran</u>, 6 N.J. Super. 306, 314 (App. Div. 1950); then quoting <u>Fried v. Kervick</u>, 34 N.J. 68, 71-74 (1961)).

Finally, when addressing the constitutionality of the 1938 Act, we note that we do not write on a blank slate. Indeed, in <u>Fried</u>, 34 N.J. at 83, our Supreme Court upheld subsection (e) of N.J.S.A. 56:6-2 against a constitutional challenge that the provision violated a retail motor fuel dealer's due process and equal protection rights. Subsection (e) prohibits retailers from providing rebates that would permit a consumer to purchase gasoline below the posted price. Similar to the below-cost sales prohibition, subsection (e), does not contain an intent to injure element. N.J.S.A. 56:6-2(e).

11

In rejecting the retail dealer's constitutional challenge, the <u>Fried</u> court concluded the Legislature's decision to safeguard the public welfare was neither discriminatory nor arbitrary, but rather a reasonable exercise of the State's policing power. <u>Fried</u>, 34 N.J. at 83. The Court's holding relied upon the 1952 New Jersey Gasoline Study Commission, the Annual Report of the Motor Fuel Division, and the Report of the United States Senate Select Committee on Small Business on Petroleum Marketing Practices in New Jersey (Senate Committee) (84th Congress, 2d Session 1956; Report No. 2810). <u>Id.</u> at 79-80. The Senate Committee report found that "competitive problems of gasoline retailers were most pronounced," in New Jersey. <u>Id</u>. at 80.

When describing the appropriate use of the state's police power, the <u>Fried</u> court stated:

> [T]he police power of a state is incapable of precise definition and limitation. It develops by an empiric process and its boundaries expand to include authority to regulate an evil associated with any business which for the public good justifies the particular measure of control. The Legislature is presumed to know the needs of the people . . . .
>
> [<u>Id.</u> at 75.]

<u>See</u> <u>also</u> <u>United Stations of New Jersey v. Getty Oil Co.</u>, 102 N.J. Super. 459, 474-76 (Ch. Div. 1968) (rejecting constitutional challenges to subsection (f) of

N.J.S.A. 56:6-2, which bars the use of gaming activities in connection with the sale of gasoline).

With these principles in mind, we turn to Speedway's specific constitutional challenges.

IV.

A. Due process violations based on the below-cost sales prohibition's <u>unreasonable restriction on free trade and competition.</u>

In counts one, two and three of its complaint, Speedway asserts that the absence of meeting competition and intent to harm elements in the below-cost sales prohibition deprives Speedway of its due process rights. Specifically, Speedway asserts that the below-cost sales prohibition "creates a conclusive presumption that all below-cost sales are made with an intent or effect of destroying competition and bars motor fuel retailers from having any opportunity to show they made such sales without any improper intent or unfair effect on competition." As a result, Speedway contends the below-cost sales prohibition is unreasonable, arbitrary, and discriminatory, as it restrains fair and open competition. We disagree.

It is well established that "a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose." <u>Nebbia v. New York</u>, 291 U.S.

A-5496-16T1

502, 537 (1934). Price-control legislation is "subject to the same narrow scope of review under principles of substantive due process as are other enactments under police power: could the legislative body rationally have concluded that the enactment would serve the public interest without arbitrariness or discrimination?" Hutton Park Gardens, 68 N.J. at 563-64.

In Nebbia, the United States Supreme Court upheld the constitutionality of the government's regulation of milk prices, and held that statutes that regulate prices are constitutional:

> [i]f the law-making body within its sphere of government concludes that the conditions or practices in an industry make unrestricted competition an inadequate safeguard of the consumer's interests, . . . statutes passed in an honest effort to correct the threatened consequences may not be set aside because the regulation adopted fixes prices reasonably deemed by the [L]egislature to be fair to those engaged in the industry and the consuming public.
>
> [Nebbia, 291 U.S. at 538.]

The goal of the below-cost sales provision, as gleaned from the legislative history, is to prevent improper trade practices related to the sale of motor fuel. Because it applies to all retailers, large and small, and to all sales regardless of volume, it is neither discriminatory nor arbitrary. Further, because it addresses Speedway's non-fundamental right to sell goods, it need only be

A-5496-16T1

supported by a conceivable rational basis. That basis can be found in the Commission's recommendation, ultimately followed by the Legislature in its enactment of the 1953 Amendments, not to amend or change the below-cost sales prohibition to include an intent to injury element, as it did with other provisions. See N.J.S.A. 56:6-22. The Legislature clearly determined that the below cost sales provision, as originally enacted, was necessary to maintain a competitive motor fuel market, particularly in an industry "dominated by giants," many of whom maintain a vertically integrated supply chain.

Further, in adopting the 1953 Amendments, the Legislature determined that selling gasoline at below cost would cause disorder in the marketplace, particularly as to smaller retailers whose survival depends upon operating at a profit, and who cannot sustain an extended price war. The Legislature deemed a broad below-cost sales provision, without an intent to injure component, or meeting the competition defense, was necessary not only to ensure a competitive market, but to avoid the adverse financial consequences that would be visited on small, retail operators from aggressive, uncontrolled pricing practices. See Fried, 34 N.J. at 79-80.

We conclude that this considered judgment by our Legislature, made nearly seventy years ago was rational and should not be disturbed. Any changes

15

to the below-cost sales prohibition in the manner requested by Speedway are best addressed by the Legislature.  See Burton v. Sills, 53 N.J. 86, 95 (1968) (courts do not sit "as a superlegislature" and "absent a sufficient showing to the contrary, it . . . [is] assumed that [a] statute rested 'upon some rational basis within the knowledge and experience of the Legislature.'").  In this regard, Speedway's citation to the below-cost sales prohibition in thirty-three states' statutes which include a intent to injure element or meeting competition defense, demonstrates that the legislature branch of government is the proper body to exercise judgment as to the necessity and reasonableness of such language in price control legislation after considering the public welfare of the citizens of a particular state, as our Legislature did when passing the 1953 Amendments.

Speedway's reliance on State v. Packard-Bamberger & Co., Inc., 123 N.J.L. 180 (1939) and Wilentz v. Crown Laundry Serv. Inc., 116 N.J. Eq. 40 (1939), is misplaced as neither case supports invalidating price control legislation with respect to products affecting the public interest.  In Packard-Bamberger, the Court determined that a below-cost sales prohibition of general merchandise, which included any personal property, was unconstitutional.  Central to its conclusion that the statute in that case was unconstitutional was the court's finding that the statute contained "no limitation

16

to transactions which involve commodities affected with a public interest." Id. at 184-85; see also Wilentz, 116 N.J. Eq. at 43 ("[A] few years ago every court in the land would have held that a statute abrogating [the] right [to sell goods], except in the case of a business or property affected with a public interest, would deprive the individual of his property without due process of law and therefore be void.") (emphasis added). Thus, as the Packard-Bamberger and Wilentz courts recognized, a significant distinction exists between price regulations involving general commodities, and those affected with the public interest.

Here, N.J.S.A. 56:6-19(c) expressly recognized that the "distribution and sale of motor fuels within this State is hereby declared to be affected with a public interest." As noted, while the Legislature has included an intent to harm element in other provisions of the statute, see N.J.S.A. 56:6-22, it has deemed it reasonably necessary to regulate differently the pricing of retailers' sale of gasoline.

Speedway also relies on three cases from Arkansas, Minnesota, and Pennsylvania, in which courts invalidated similar statutes for their lack of an intent to harm element. See Ports Petroleum Co. v. Tucker, 916 S.W.2d 749 (Ark. 1996); Twin City Candy & Tobacco Co. v. A. Weisman Co., 149 N.W.2d 698 (Minn. 1967); Commonwealth v. Zasloff, 13 A.2d 67 (Pa. 1940). We

conclude that the unique legislative history related to the 1938 Act and 1953 Amendments render those cases fundamentally distinguishable.

In Ports Petroleum Co., the Court considered the below-cost sales prohibition in the Arkansas Petroleum Trade Practices Act (APTPA). In that case, the Court determined the APTPA "prohibit[ed] legitimate and innocent competition fostered by below-cost sales," and concluded that "[h]ad the [APTPA] included a prohibition against such sales made with predatory intent to damage and destroy competition[,] . . . due process impairment would not be a concern." Ports Petroleum Co., 916 S.W.2d at 755. In making its determination, the Court employed a test adopted by the Alabama Supreme Court in State v. Mapco Petroleum, Inc., 519 So. 2d 1275, 1284-85(Ala. 1987), that "[i]f the act penalizes innocent acts not reasonably related to the problem of monopolistic practices or other deceptive, disruptive, or destructive price cutting, the act strikes too broadly." Ibid.

The Ports Petroleum Co. court, however, failed to discuss Arkansas's legislative history that led to the enactment of the APTPA. Similarly, the Twin City Candy & Tobacco Co. and Zasloff courts did not consider the legislative history underpinning the Minnesota and Pennsylvania statutes at issue. As we have previously detailed, New Jersey's unique and lengthy legislative history

A-5496-16T1

related to the 1953 Amendments confirms the necessity of the below-cost sales provision to ensure a competitive market, while avoiding harmful financial consequences resulting from uncontrolled pricing practices.

B. Due process violations based on the vague and overbroad nature of the below-cost sales prohibition.

In count four of its complaint, Speedway asserts that the terms "net cost" and "selling expenses" in N.J.S.A. 56:6-2(b) are unconstitutionally vague, and the State is collaterally estopped from disputing the issue. Further, in the fifth count of its complaint, Speedway argues the below-cost sales prohibition is overbroad because it "restrain[s] constitutionally-protected fair competition." Again, we disagree.

"A law is void if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Twp. Of Pennsauken v. Schad, 160 N.J. 156, 181 (1999) (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983)). "[T]he requirement of statutory clarity is essentially a due process concept grounded in notions of fair play." In re N.N., 146 N.J. 112, 126 (1996) (quoting State v. Cameron, 100 N.J. 586, 591 (1985)). Vague laws are constitutionally banned in order to "invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application." Cameron, 100 N.J. at 591. "The determination

19

of vagueness must be made against the contextual background of the particular law and with a firm understanding of its purpose." Ibid. "Absent any explicit indications of special meanings, the words used in a statute carry their ordinary and well-understood meanings." State v, Afanador, 134 N.J. 162, 171 (1993).

"[D]ifferent levels of 'definitional clarity' are required depending on the type of statute under scrutiny." Heyert v. Taddese, 431 N.J. Super. 388, 424 (App. Div. 2013) (quoting Commc'ns. Workers of Am. v. State, Dep't of Treasury, 421 N.J. Super. 75, 104 (Law Div. 2011)). Economic legislation "is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Cameron, 100 N.J. at 592 (quoting Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 498 (1982)).

Further, a "regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." In re Farmers' Mut. Fire Assurance Ass'n of New Jersey, 256 N.J. Super. 607, 619 (App. Div. 1992) (quoting Village of Hoffman Estates, 455 U.S. at 498). Thus, "[a] commercial regulatory statute can be held unconstitutionally vague only if it is 'substantially incomprehensible.'" Ibid. (alteration in original)

(quoting In re Loans of N.J. Property Liability Ins. Guar. Ass'n, 124 N.J. 69, 78 (1991)).

We first address Speedway's claim that the State is collaterally estopped from defending against its vagueness challenge due to the court's ruling in Neeld v. Automotive Products Credit Ass'n, 21 N.J. Super. 159 (Dist. Ct. 1952.) Collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Ziegelheim v. Apollo, 128 N.J. 250, 265 (1992) (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). A party asserting collateral estoppel must demonstrate:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [First Union Nat. Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007) (citing Hennessy v. Winslow Twp., 183 N.J. 593, 599 (2005)).]

However, "[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002).

21

In <u>Neeld</u>, the court addressed whether N.J.S.A. 56:6-2(b) was "unenforceable for uncertainty." The court noted that as a district court, it was an "inferior court of limited jurisdiction," <u>Neeld</u>, 21 N.J. Super. at 161, and acknowledged that "the better practice is for the inferior court to assume that an act is constitutional until it has been passed upon by the Appellate Court." <u>Ibid.</u> (quoting <u>Legg v. County of Passaic</u>, 122 N.J.L. 100, 104 (Sup. Ct. 1939)). Thus, while the court found N.J.S.A. 56:6-2(b) unenforceable due to its uncertainty, it did not determine the below-cost sales prohibition unconstitutional. Rather, the court stated, "[a]lthough [it is] inclined to think it invalid, it cannot be said to be clear beyond a reasonable doubt that the prohibition against selling below cost, without more, is unconstitutional." <u>Id.</u> 163.

Further, the 1952 <u>Neeld</u> decision was never appealed, nor has the Legislature amended N.J.S.A. 56:6-2(b), despite being presented with the opportunity on at least four occasions. Finally, unlike the <u>Neeld</u> court, we have undertaken a thorough review of the legislative history and constitutionality of the below-cost sales probation, and have conclusively determined it passes rational basis scrutiny. Under these circumstances, we conclude it would be fundamentally unfair to apply the equitable doctrine of collateral estoppel here. <u>Winters v. North Hudson Regional Fire and Rescue</u>, 212 N.J. 67, 93 (2012)

("Collateral estoppel is an equitable doctrine and should be invoked only to promote equity."); Hennessey, 368 N.J. Super. at 452 ("An equitable doctrine, collateral estoppel is not applied if it is unfair to do so.").

Turning to the merits of Speedway's vagueness argument, we reject Speedway's claim that persons of ordinary intelligence would be unable to understand the meaning of the terms used in N.J.S.A. 56:6-2(b). While we acknowledge that the phrase "net cost" is not defined, it is a commonly used business term used in retail settings. Further, upon an examination of the ordinary, well-understood definitions of "net" and "cost,"[3] we conclude a person of ordinary intelligence can ascertain the definition of "net cost."

We reach a similar conclusion with respect to the term "selling expense" which is defined in N.J.S.A. 56:6-1 as "all overhead and general business expense[s]." As there is no "explicit indication[] of [a] special meaning[], the words used in [the] statute carry their ordinary and well-understood meanings." Afanador, 134 N.J. at 171. The well-understood definition of "overhead," another commonly understood business term, is "business expenses (such as

---

[3] "Net" is defined as "remaining after the deduction of all charges, outlay, or loss," Merriam-Webster, https://www.merriam-webster.com/dictionary/net (last visited Apr. 8, 2019), and "cost" is defined as "the amount or equivalent paid or charged for something." Merriam-Webster, https://www.merriam-webster.com/dictionary/cost (last visited Apr. 8, 2019).

rent, insurance, or heating) not chargeable to a particular part of the work or product." Merriam-Webster, https://www.merriam-webster.com/dictionary/overhead (last visited Apr. 8, 2019).

With respect to Speedway's overbreadth claim, we note that in determining if a statute is overbroad, "the question is whether the enactment reaches a 'substantial amount of constitutionally protected conduct.'" State v. Lee, 96 N.J. 156, 164-65 (1984). A court must ask "whether the reach of the law extends too far in fulfilling the State's interest." Id. at 165. Here, as discussed at pp. 14-16, the Legislature had a legitimate interest in regulating the pricing for all motor vehicle sales, regardless of intent. Thus, we conclude N.J.S.A. 56:6-2(b) is not overbroad.

V.

Based on our conclusion that the below-cost sales provision does not represent an unconstitutional restraint on trade nor is otherwise impermissibly vague and overbroad under the Federal and New Jersey Constitutions, we reject Speedway's claim that the court erred in dismissing the sixth count of the complaint asserting violations of the Federal Civil Rights Act and New Jersey Civil Rights Act. Without an underlying constitutional violation, there exists no legal basis for those claims. See Rezem Family Assocs., LP v. Borough of

Millstone, 423 N.J. Super. 103, 114-115 (App. Div. 2011) (stating that civil rights laws "'[are] not [themselves] a source of substantive rights,' but merely provide[] 'a method of vindicating federal [or state] rights elsewhere conferred.'"); 42 U.S.C. § 1983; N.J.S.A. 10:6-2.

## VI.

Finally, we find without merit Speedway's claims that the court improperly applied Rule 4:6-2(e) and that its factual findings and legal conclusions failed to satisfy Rule 1:7-4. In an oral decision, the court recited the legal standard applicable with respect to Rule 4:6-2(e) dismissal motions, followed by an explanation of the rational basis review to be applied to Speedway's constitutional claims, and a summary of each party's arguments. Then, the court, accepting as true Speedway's factual allegations, determined that they were "palpably insufficient to support [the] claim[s]." Finally, the court noted the presumption of constitutionality of statutes, particularly economic legislation, and concluded that Speedway failed to rebut this presumption. We are satisfied that the court properly applied Rule 4:6-2(e) and complied with its obligation under Rule 1:7-4. Printing Mart-Morristown, 116 N.J. at 746 ("In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of

the complaint."); <u>Avelino-Catabran v. Catabran</u>, 445 N.J. Super. 574, 594 (App. Div. 2016) ("When a trial court issues reasons for its decision, it 'must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'")

Because we affirm the court's order dismissing the complaint, we need not address Speedway's request that the matter be assigned to a different judge on remand. We note, however, there is no support in the record for the request.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5496-16T1